# Hood *versus* Hood.

An entry by the owner, upon land in the adverse possession of another, in order to be effectual in tolling the statute of limitations, must not be accidental, equivocal, or by invitation of him in possession, but to regain a pedal possession of the land inconsistent with the title of the occupier.

Such an entry made by an agent of the owner must be with the *avowed* object of claiming it for his principal, which avowal may be expressed in words or indicated by an act equally significant.

Entering and surveying off a part of the tract for another, would be such an act of notorious dominion as would arrest the running of the statute.

It is not error for the Court below to answer propositions submitted to them in the language employed by the Supreme Court in deciding similar points.

ERROR to the District Court of *Allegheny county*.

This was an action of ejectment brought by the executors of John M. Hood, deceased, against Mary and others, children and heirs at law of McClelland Hood, deceased, to recover the possession of a tract of land situated in Ohio township, Allegheny county, called "Safe Landing," containing 226 acres.

The plaintiffs showed a regular chain of title from the Commonwealth to their testator, vesting the legal title in him on the 6th of February, 1808. His will gave his executors authority to sell and dispose of his real estate.

The defendants resisted a recovery, on the ground that John had purchased the land for McClelland with the money of the latter, and held the legal title in trust for him. Or, if not purchased with the money of McClelland, that John had made a free and voluntary gift of it to his brother, in pursuance of which McClelland had taken possession in 1808, and had made valuable improvements on it. And also that McClelland entered into the land, claiming it as his own, in 1807, or 1808, and so continued in the actual, exclusive, and adverse possession of it up to the time of his death, and that his title, or that of his heirs, had become perfect under the statute of limitations.

[Hood *v.* Hood.]

From the evidence, it appeared that John M. Hood and McClelland Hood were sons of David Hood, who resided in the county Tyrone, Ireland. Their father was possessed of some estate, the value of which did not appear. He died in July, 1801, leaving a widow and ten children, of whom John and Robert had gone to the United States, the former in 1799, the latter in 1801. After the deaths of their father and mother, John went to Ireland, sold whatever estate there was, and returned to Philadelphia in 1802 with his brothers and sisters. Shortly afterwards he came to Crawford county with his brothers and sisters, except David and Wallace, where he purchased a piece of land, and, leaving the family in charge of McClelland and Robert, he shortly afterwards returned to Philadelphia, and entered into business as a grocer. In 1807 he was informed by letter from Hugh Davis that the place now in controversy was for sale, and thereupon he wrote to McClelland to go down and look at the place; and, if it pleased him, to buy it, and to tell Davis to write to him at Philadelphia, and he would forward the money to pay for the land.

McClelland Hood went down and looked at the premises, and the purchase was made from Jonathan Richardson, who, with his wife, on the 6th February, 1808, conveyed them to John M. Hood. The deed was recorded on the same day, and the fees paid by Hugh Davis. Shortly after the purchase McClelland Hood moved on to the land, and continued in the occupancy of it till his death in 1846, with the exception of two years, from 1821 to 1823, and his heirs since his death continued the possession to the time of trial.

The plaintiffs alleged that there was no trust; that the evidence given to establish it was too vague and indefinite. Also that McClelland's possession was not adverse and hostile, he having recognised the right and title of John; but, even if it had been adverse, that John by his agents had entered upon the land to survey it, and exercised other acts of ownership over it, before the bar of the statute was completed, and which would toll its operation.

The testimony on these matters was very voluminous and conflicting.

The Court (HAMPTON, P. J.) instructed the jury, that there was not sufficient evidence of either a trust or gift to submit to them. Those parts of the charge which related to the alleged holding under John, and entries upon the land by the agents of John M. Hood, and which was the principal matter reviewed in this Court, was as follows:—

"Did McClelland Hood, the defendants' ancestor, enter upon the land in dispute, claiming the same as his own, adversely to all others; and did he hold notorious and hostile possession thereof

[Hood *v.* Hood.]

for a period of twenty-one years, using, enjoying, and occupying the same exclusively as his own, and adversely to the holder of the legal title? Or, if he entered in subserviency to the legal title of John M. Hood, with his permission, or as his tenant at will, did his possession afterwards become adverse thereto, by such open, continued, and notorious acts of a hostile character as to preclude all doubt as to the nature of his possession and holding, or the want of knowledge on the part of John M. Hood, the real owner? If McClelland Hood entered under an adverse claim, or if he entered in subserviency to the title of his brother, and his possession afterwards became adverse by open, notorious, and hostile acts, not rebutted or explained by the recognition or admission of his brother's title, and if he continued to hold such possession for a period of twenty-one years, then the plaintiffs are not entitled to recover, unless you are satisfied from the evidence that John M. Hood in his lifetime, either by himself or his agent, or his executors since his death, made entry on said land within the said period of twenty-one years, of such a character as to suspend the running or operation of the statute. If, however, McClelland Hood, in taking possession of the said land, intended to hold and occupy it, subject to the will of his brother John; and if he did so hold and occupy the same, the statute of limitations will form no bar to the plaintiffs' recovery in this action: Criswell *v.* Altemus, 7 *Watts* 581.

"If you find that McClelland Hood, either by himself, or in connexion with those claiming under him, was in the adverse possession of the land in controversy, at any time between the date of its purchase and the bringing of this action; and if you are satisfied, from the evidence, that he did not recognise or acknowledge the title of his brother John, in the manner required by the rules of law just laid down, for a period of twenty-one years, your next inquiry will be, did John M. Hood, during his lifetime, either by himself, or his agents, make an entry upon the land, within the said period of twenty-one years, of such a character as to suspend the running of the statute, or have the plaintiffs so entered since his death? And this is a question of fact for the determination of the jury under the law, as we shall now lay it down.

"In Altemus *v.* Campbell, 9 *Watts* 30, Chief Justice GIBSON says: 'The office of an entry is not to claim title, but to regain a pedal possession; and it has been said that to make it good, the former possessor and his servants must be removed from the land—an assertion qualified by Lord HOLT in an anonymous case in 1 *Salk.* 246, who says, that an entry without expulsion, makes such a seizure only, that the law will adjudge him in possession who has the right, but that it will not work a disseisin or abatement.' And again he says: 'The effect of an entry, it is agreed, depends on the intent of it, expressed by words, or intimated by an act

equally significant. I would say, in a few words, that there must be an explicit declaration, or an act of notorious dominion, by which the claimant challenges the right of the occupant: or it cannot perhaps be better defined than by saying that the entry must bear on the face of it an unequivocal intent to resume the actual possession."

"And, in Hoopes *et al. v.* Garver's Administrator, 3 *Harris* 525, Mr. Justice CHAMBERS says: 'In the case of Holtzapple *v.* Phillebaum, 4 *W. C. C. R.* 356, it is ruled that to constitute a legal entry on land to avoid the bar of the statute, the party must enter with intent to claim the possession, and must do some act to prove that such was his intention by acts amounting to a trespass on the land, or he must declare that he enters for the purpose of claiming or taking possession. No particular form of words is prescribed by law, the substantial part is the taking or declaring the intention to take or claim possession.'

"The case of Altemus *v.* Campbell is here referred to with approbation, where the learned judge continues—'So, in the case of Miller *v.* Shaw, 7 *Ser. & R.* 129, it is said, where a person enters *animo clamandi*, as when he enters and surveys the land, it operates as a bar to the act: and where the intent with which the entries are made is doubtful, the question of intention was to be submitted to the jury.'

"In the case of Ingersoll *v.* Lewis, 1 *Jones* 212, it is ruled that when the agent of the owner enters upon land with the avowed object of claiming it, making a survey thereof with the knowledge and assent of the person in possession, these acts operate to bar the running of the statute; and if the proof of these is satisfactory to the jury, the Court should give a binding direction to that effect.

"Keeping these principles of law steadily in view as your guide on this part of the case, you will inquire whether at any time, during the running of the statute, John M. Hood himself, or by his agents, made such an entry upon the land, as would suspend its operation? If he did, then the adverse possession of McClelland Hood would date only from the time of such entry, and would require the full period of twenty-one years from that time to complete his title. But, as we have before instructed you, if his title was completed under the statute, before the entry, or recognition of title, it could not be affected thereby.

"If then you are satisfied from the evidence, that Hugh Davis, acting as the agent of John M. Hood, in 1828—or at any other time, entered upon the land in dispute, with the avowed object of claiming it for his principal, and procured a survey to be made thereof, with the knowledge and assent of McClelland Hood; this was such an entry as would in law stop the running of the statute.

"If you believe from the evidence that John M. Hood or his

[Hood *v.* Hood.]

agent in 1830, entered upon the land in controversy, with the avowed object of claiming it for the said John, and surveyed, or marked off on the ground, eight acres, or any other quantity, for the exclusive use and possession of David Hood, with the knowledge and assent of McClelland Hood, and that the same was surveyed to David by John; this was such an entry as would, in law, bar the running of the statute of limitations.

"If the evidence satisfies your minds that, in 1835, Hugh Davis, Nathaniel Patterson, or any other person, acting as the agent of John M. Hood, entered upon this land, with the avowed intention or object of claiming it for his principal, John M. Hood, and made, or procured to be made, a survey thereof with the knowledge and assent of McClelland Hood, this was such an entry as would in law suspend the running of the statute. So, also, of the survey made by Colonel Gibson, at the instance of George R. Riddle, in 1850.

"The whole case, then, is narrowed down to this single proposition, viz.: Whether McClelland Hood himself, or himself and his heirs together, held such adverse possession of this land, as the law requires to give title, for any period of twenty-one years together, before the institution of this suit, without recognising the title of John M. Hood, or without any entry by him or his agents. If you find such to be the fact, then the defendants will be entitled to your verdict; but if not, then the plaintiffs are entitled to recover. You will take into consideration all the evidence submitted to you by the Court, and give to each portion thereof such weight as the importance of the interests involved demand; and after applying the law, as laid down by the Court, to the facts as you find them to be, render such a verdict as is warranted by the evidence."

The jury found for the defendants. The plaintiffs below sued out this writ, and assigned the foregoing instructions, and the manner of submitting the facts, for error.

*G. P. Hamilton* and *Shaler*, for plaintiffs in error.—The answer, as to the manner of McClelland Hood's occupancy, was vague and obscure. A refusal to give a clear and distinct answer, is error: 1 *Ser. & R.* 449; 2 *Id.* 74; *Id.* 51; 5 *Watts* 30–1; 11 *Ser. & R.* 324; 6 *W. & Ser.* 62. The question submitted was, whether certain acts constituted a hostile, adverse possession. The Court evade the question.

How did McClelland enter? The evidence upon the subject is clear, and there was no change in the nature of the tenure. If he entered under John, it lies upon the other party to show such a change in his possession as would make it adverse: 1 *Wilson* 176; *Russ. Cr. Cas.* 498, 552; 1 *Ser. & R.* 458; 9 *Exch. R.* 643; 7 *Harris* 390; 1 *Jones* 219; 9 *Met.* 418; 3 *Watts* 165; 4 *How.* 289.

[Hood *v.* Hood.]

·On the subject of the entry by John M. Hood or his agents, which was relied upon to toll the statute, they cited 7 *Ser. & R.* 129; 9 *Watts* 28; 1 *Jones* 220; 3 *Harris* 525.

. *Knox,* for defendants in error, on the subject of the adverse possession, cited 6 *Ser. & R.* 21; 1 *Pa. Rep.* 8; 4 *How.* 289; 3 *Harris* 525; 1 *Ser. & R.* 129; *Co. Litt.* 245 b; 9 *Watts* 30; 1 *Jones* 212; 10 *Watts* 142; 6 *Barr* 227; 6 *W. & Ser.* 318; 10 *Ser. & R.* 188, 306; *Cowp.* 218; 1 *W. & Ser.* 191.

The opinion of the Court was delivered by

WOODWARD, J.—All the material facts in this case were sternly contested, and it was therefore a case peculiarly within the province of the jury. Nor is there any complaint that the Court withdrew the facts from the jury, but the errors assigned were all founded on the manner of their submission. It is especially objected that in answering vital points submitted on the part of the plaintiffs, the Court recited to the jury lengthy extracts of apparently conflicting opinions and dicta of the Supreme Court, leaving it to the jury to extract the rule of law from the authorities cited.

The record shows that there is some ground for this complaint. The numerous quotations from judicial opinions, predicated of a state of facts peculiar to each case, were not the most satisfactory and skilful mode of answering the points. A brief and comprehensive statement of the *result* of the authorities is always better for a jury than the authorities themselves. Judicial opinions are written to guide judges, not juries, and the judge who presides at the trial is expected to deduce the rules of law applicable to the case from all that has been recorded for his instruction, and to deliver them to the jury relieved, as much as possible, from the verbiage in which they are found clothed. The law is often like particles of shining ore mixed in a mass of crude rubbish, from which the intellect of the judge, operating like a magnet, should extract it for the service of the jury. But when, instead of doing this, he hands over the mass itself to the jury, how are we to say they did not find the ore? Told that it was there, and taught how to use it, it was quite possible for them to extract it for themselves, and we are bound to presume that they performed the possible duty which was laid upon them. There is no standard but the discretion of the judge himself to determine how much help he shall render a jury in weighing facts, and applying the law to them. Perhaps the least amount of aid is rendered where the law is delivered in the form of copious extracts from judicial opinions in other cases, but nevertheless we cannot say the Court erred in matter of law, when they answered legal propositions in the very terms in which similar propositions had been answered in this

[Hood v. Hood.]

Court. Take, for example, the answer most complained of in this record—that which the Court gave to the points relative to the entry of John M. Hood, or his agent, to toll the statute—it cannot when taken altogether (the only fair way of estimating any charge) be said to be erroneous in point of law. After quoting Judge GIBSON's clear exposition of the law of entry in Altemus v. Campbell, 9 Watts 30, and the language of this Court in Ingersoll v. Lewis, 1 Jones 212, the learned judge put it to the jury to say whether the agent of John M. Hood entered upon the land with the "avowed" object of claiming it for his principal.

Now counsel suppose the jury were misled by this word avowed —that they understood an entry to survey off 8 acres for David Hood was not sufficient to stop the running of the statute, unless accompanied with some verbal declaration that such was the effect intended. But they had just been instructed, in the language of Judge GIBSON, that the effect of an entry depends on the intent of it expressed in words, or *intimated by an act equally significant* —that there must be an explicit declaration, or *an act* of notorious dominion; and can it be doubted they would understand from *all this* that the intention could be *avowed* as well by deeds as by words? An entry to toll the statute must not be accidental—nor by invitation of him in possession, nor for any equivocal purpose whatever, but to regain a pedal possession of the land for purposes inconsistent with the title of the occupier. An entry to measure off 8 acres for another would be such a purpose, and how could it be more distinctly avowed than by the act itself? A jury of common intelligence could not fail, we think, to get the very law of entry from all that the Court placed before them. We are not then to reverse the judgment on a mere suggestion that they may have misunderstood the word avowed. If they were satisfied that it was the brother in possession who was parting with the 8 acres to David, or that the survey was intended as an adjustment of boundaries between McClelland and a neighbour, they had good ground for not giving effect to the entry. On this point, as on every other in the cause, the jury were the disposing power, and we cannot perceive any satisfactory evidence in the record that they were misguided by the Court.

　　　　　We have looked through all the matters assigned for error, and discovering no adequate grounds for reversing the judgment, it is affirmed.

LEWIS, C. J., was absent when this cause was argued.